777 So.2d 1252 (2001)
STATE of Louisiana
v.
David D. ALLEN.
No. 2000-KA-0013.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 2001.
*1254 Harry F. Connick, District Attorney, Leslie Parker Tullier, Jane Louise Beebe, Assistant District Attorneys, New Orleans, LA, Counsel for Plaintiff/Appellee.
David Allen, pro se.
Pamela Sue Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judges BAGNERIS, TOBIAS, and GORBATY.
BAGNERIS, Judge.

STATEMENT OF CASE
On December 17, 1997, the defendant, David D. Allen, was charged by bill of information with two counts of first degree robbery in violation of La. R.S. 14:64.1. The defendant pled not guilty to both counts at his arraignment on December 19, 1997. The trial court conducted a motion hearing on March 12, 1998. The trial court found probable cause and denied defendant's motions to suppress evidence and identification. The defendant was found guilty as charged on both counts after a jury trial on March 26, 1998. The State filed a multiple bill of information on March 30, 1998. The defendant filed motions for new trial and post judgment verdict of acquittal on April 2, 1998. A multiple bill and sentencing hearing was held on June 19, 1998. The trial court sentenced the defendant to serve thirty years at hard labor without benefit of probation, parole or suspension of sentence on each count, to be served consecutively. After the trial court adjudicated defendant a second felony offender on each count, it vacated the original sentences imposed and sentenced defendant, under the multiple bill, to serve thirty years at hard labor without benefit of probation, parole or suspension of sentence on each count, to be served consecutively. Defendant orally filed motions for reconsideration of sentence and appeal. The trial court denied defendant's motion for reconsideration of sentence. Defendant's motion for appeal was granted. On August 11, 1999, the defendant was granted an out of time appeal and a return date of October 13, 1999 was set. The trial court denied defendant's motion for new trial on April 18, 2000.

FACTS
Greg Fox ("Mr. Fox") was employed as a cashier at the A-Plus Kola Video Store in October and November of 1997. Mr. Fox testified that on October 23, 1997, and November 7, 1997, he worked from 12:00 a.m. to 8:00 a.m. In the early morning hours of October 23, 1997, Mr. Fox was sitting near the cash register when an unknown person came into the store. The subject was wearing a white ski mask and a blue and white sweatshirt. The subject jumped over the counter and told Mr. Fox to open the register and give him the money. The subject had one hand in his pocket. Mr. Fox testified that he thought the subject had a gun. The subject took seventy-three dollars from the register and ran out of the store, across Chef Menteur Highway towards I-10. The subject was between 5'6" and 5'8", and weighed less than one hundred fifty pounds. At that point, Mr. Fox could not say who the subject was, but he recognized "something" about the person. He testified that, at that time, he suspected it was the defendant. Mr. Fox and the defendant had worked two shifts together at the video store when the defendant was employed there as a security guard.
Mr. Fox further testified that he was working at the store in the early morning hours of November 7, 1997, when he was robbed again. On that night, a subject came into the store and jumped over the counter. The subject told Mr. Fox to open the register and give him the money. The subject pushed something in Mr. Fox's back. At first, Mr. Fox thought it was a gun. When he turned, he saw that the subject was wearing a large gold ring. *1255 After Mr. Fox opened the register, the subject asked him where the rest of the money was, as the store had a drop safe. The subject then took the currency and quarters in the register. Because Mr. Fox had just opened a roll of quarters, there were approximately nine to ten dollars in quarters in the register. Mr. Fox testified that the subject was wearing a dark blue lightweight jacket, white gym shoes and jeans, with a blue and white handkerchief over his face. The subject also wore sunglasses. After the subject left, Mr. Fox called the police. The police arrived shortly thereafter. The officers apprehended the subject. Mr. Fox identified the defendant as the person who robbed him. Mr. Fox stated that he was able to make a positive identification from the clothes and the gold ring. Mr. Fox further stated that he believed the defendant committed the October robbery. Mr. Fox viewed the videotapes of the robberies and stated that the tapes accurately depicted the events. Mr. Fox noted that the subject acted the same way in both robberies (e.g., he jumped over the counter using his left hand to pivot himself), and the subject was the same height and weight. Additionally, Mr. Fox stated that he also recognized the defendant's eyes and voice during the October robbery. Mr. Fox acknowledged that he was robbed two other times while working at the video store. However, on those occasions, the perpetrator calmly walked around the counter with his hand in a white paper bag. The perpetrator took the money out of the register and walked out of the store. The perpetrator never said a word. He was 5'9" to 5'10", and wore fatigue-colored clothing, a black handkerchief, gym shoes, a jacket and a stocking cap.
Harold Allison ("Mr. Allison") was working as a security guard at the A Plus Kola Video Store at the time of the robbery on November 7, 1997. Mr. Allison testified that he saw a person coming from the "breezeway" under the interstate. The person went inside the ballasts and came back out. When the person saw Mr. Allison looking at him, the person went back behind the ballasts that hold the interstate up. Mr. Allison testified that he became suspicious and returned to his post to call the police. When he returned to the security office, he looked at the video monitor and saw the end of the robbery. He observed the person leaving the store. Mr. Allison called 911 and then went to wait with the cashier for the police to arrive. The police responded quickly to the call. The police then came back with two or three suspects for Mr. Allison and the cashier to identify. The cashier testified that he was able to positively identify one person. Mr. Allison was unable to make an identification, as he had not seen the subject's face. Additionally, he could not provide a description, as it was too dark. He could only see that the subject wore jeans and a jacket.
Detective Jerry London ("Detective London") and other New Orleans police officers were involved in a surveillance operation of the video store on November 7, 1997. The store had been robbed almost every weekend for over a month. Detective London and two other officers, Sergeant Austin and Detective Maes, were located in the Family Inn Motel, which was directly across from the video store. During the surveillance, Sergeant Austin observed a subject walking under the interstate. The officer informed Detectives London and Maes of his observations. The officers watched the subject, who disappeared into the shadows for a minute. The subject reappeared wearing a mask on his face. The subject ran to the bookstore. Sergeant Austin advised other officers in the area via police radio. Detective London also advised other officers on the surveillance team that a suspect was entering the store. He provided the officers with a description of the subject. Detective London testified that he left the hotel room and pursued the subject after observing him running out of the store. The subject ran towards Ray Avenue. Sergeant Austin and two other officers pursued the *1256 subject in their police vehicles while Detective London continued on foot pursuit. Other police officers apprehended the subject behind the Chevron service station on Chef Menteur Highway. Detective London arrived on the scene shortly after the officers had apprehended the subject. The officers searched the defendant after his arrest. The officers found a brown paper bag containing fifty-nine dollars and twenty-five cents in currency and coins. The officers also seized a blue and white bandanna. At trial, Detective London identified the defendant as the person he saw enter and later run from the video store and as the person that the other police officers later apprehended. Detective Maes went to the video store and interviewed the witnesses. The cashier made a positive identification of the defendant. The defendant's clothing was seized at Central Lockup. Detective London testified that crime lab technicians were called to the scene. The counter and the cash register were dusted for fingerprints.
Officer Glen Burmaster, of the Latent Fingerprint Unit, testified that he analyzed two prints taken from the scene. One of the prints, a fingerprint, could not be matched. The other print, a palm print found on the cash register, matched the defendant's print.
The defendant testified at trial and denied involvement in the robberies. He acknowledged a prior conviction in 1992 for possession of cocaine. The defendant stated that on the morning of November 7, 1997, he was waiting for a RTA bus when the police stopped him. According to the defendant, he saw someone run past him while he was waiting for the bus. He testified that he had been at his girlfriend's apartment, in the Parc Brittany Apartments, earlier that morning and was on his way to his house on Perlita Street. He testified that he resided at 4345 Perlita Street with his brother, Daniel Allen. The defendant further stated that his girlfriend had given him the money that the police found on him. He acknowledged he had worked at the video store for approximately five weeks before he was fired. The defendant denied ownership of the clothing he was allegedly wearing at the time of the robbery. He testified that one of the police officers had the clothing in the officer's vehicle and took the clothes out of the vehicle after the defendant was arrested. The defendant admitted ownership of the ring identified by Mr. Fox as the ring worn by the perpetrator.

ERRORS PATENT
A review of the record reveals that the trial court ruled on the defendant's motions for new trial and post verdict judgment of acquittal after sentencing the defendant. Defendant's sentences must be vacated and the case remanded for resentencing because the sentences were imposed before the motions were disposed of, in violation of La.C.Cr.P. arts. 821, 853 and 873. State v. Randolph, 409 So.2d 554 (La.1981); State v. Smith, 553 So.2d 934 (La.App. 4th Cir.1989).

DISCUSSION

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant contends that the State failed to sufficiently prove his identity as the person who committed the two robberies.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from *1257 which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The defendant argues that the State produced insufficient evidence to prove that he was the person who committed the two robberies. He contends that Greg Fox was unable to positively identify him as the perpetrator. The defendant is mistaken. Greg Fox testified at trial that he positively identified the defendant as the perpetrator, after the defendant was apprehended. Mr. Fox testified that although he could not identify the defendant after the first robbery, he knew that he had previously seen the perpetrator. Mr. Fox stated that he recognized the defendant's eyes and voice. In addition, the defendant's actions were basically the same at each robbery. The defendant entered the store with his face partially masked. He jumped over the counter, using his left hand to pivot himself. The defendant then told Mr. Fox to open the register and give him the money. In addition, the defendant was seen entering and exiting the store on November 7th by Detective London and Sergeant Austin. The officers followed the defendant and apprehended him within minutes of the robbery. Mr. Fox then positively identified the defendant as the perpetrator based upon his clothing and ring. Further, defendant's palm print was found on the cash register. Mr. Fox stated at trial that, after seeing the defendant on November 7th, he believed the defendant was the perpetrator of the October 23rd robbery. Mr. Fox noted that the perpetrator in both robberies was of the same height and build. In addition, the jury was able to view the videotapes from both robberies. They were able to determine whether to accept Mr. Fox's testimony concerning the similarities of the two burglaries. Such evidence was sufficient for the jury to determine that the defendant was the perpetrator of both robberies.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant also argues that the trial court erred when it adjudicated him to be a second felony offender. The defendant contends that the State failed to produce sufficient evidence to prove identity and to prove that the prior guilty plea was knowingly and voluntarily made. The State alleged in the multiple bill of information that the defendant had previously pled guilty to possession of cocaine on April 8, 1992, in the State of Michigan. At the multiple bill hearing, the State produced a packet of documents from the Michigan court concerning the defendant's prior conviction. The packet contained a certified copy of the defendant's birth certificate, a fingerprint card and a probation order judgment. Officer Lawrence James testified at the hearing that he took defendant's fingerprints on the morning of the hearing and that the defendant's fingerprints matched the fingerprints on the fingerprint card from the Michigan card.
In State v. Bolton, 379 So.2d 722 (La. 1979) and State v. Holden, 375 So.2d 1372 (La.1979), the Louisiana Supreme Court held that when the State used a plea from another state or a federal plea as a prior conviction in order to enhance a defendant's sentence under the Multiple Offender Statute, that State had to prove the conviction and its date by a certified copy of a minute entry (or an equivalent contemporaneously recorded or executed document) *1258 showing the plea and that the accused was represented by counsel. The State must also show that the defendant in the prior plea and the present offense are the same person.
In the case at bar, the State failed to meet its burden. The documentation produced from the Michigan court does not show that the defendant was represented by counsel or whether the defendant pled guilty or went to trial. The documentation in the record is a "probation order judgment," which only indicates the defendant was convicted of possession of cocaine and sentenced to three years probation on April 8, 1992. The document does not indicate whether the defendant was represented by counsel. Only the trial judge and the defendant signed the judgment. As such, the documentation is insufficient to meet the State's burden under Bolton and Holden. Accordingly, the defendant's adjudications and sentences as a second felony offender should be reversed.
This assignment of error has merit.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant also argues that the trial court imposed unconstitutionally excessive sentences. The trial court sentenced defendant to serve thirty years at hard labor without benefit of probation, parole or suspension of sentence on each count, to be served consecutively. After adjudicating the defendant to be a second felony offender, the trial court vacated the original sentences imposed and sentenced the defendant to serve thirty years at hard labor without benefit of probation, parole or suspension of sentence on each count under the Multiple Offender statute. The trial court further ordered that the sentences were to be served consecutively.
Article I, Section 20, of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
Prior to sentencing the defendant, the trial court stated:
This matter came before the Court on the 26th day of March, 1998, for trial. Mr. Allen was present in Court dressed in civilian clothing at all times during the trial. At the conclusion of the evidence offered by both sides, the forearm (sic) of the jury returned in open court the following verdict: As to Count 1, guilty as charged of first degree robbery. As to Count 2, guilty as charged of first-degree robbery. I note that as charged in the bill of information in this case, Mr. Allen was charged with having on the 23rd of October, 1997 committing robbery of Gregory Fox of U.S. currency when the defendant reasonably led the victim to believe he was armed with a dangerous weapon. Count 2 alleged that on the 7th of November 1997, Mr. Allen robbed Gregory Fox of U.S. currency when he led the victim reasonably to believe that he was armed with a dangerous weapon. I find these to be based on the testimony adduced at trial to be separate and distinct incidents, not one concurrent offense, but two separate and distinct incidents, one on the 23rd of *1259 October, 1997, and one on the 7th of November, 1997. I also note for the record that on the dates alleged in this bill of information, Mr. Allen was out on bond, bond that had been authorized by this Court as a personal surety bail bond and that he had at the time of these offenses other charges pending against him and he was out on bond on those offenses.
The trial court noted that the defendant had several criminal arrests in addition to the 1992 conviction from Michigan. The defendant was out on bond for a pending charge when he committed the two present offenses. Thus, the defendant's criminal history included at least three felony convictions. As such, the thirty-year sentences are not unconstitutionally excessive.
This assignment of error is without merit.

CONCLUSION
Accordingly, the defendant's convictions are hereby affirmed. The defendant's adjudications as a second felony offender are hereby reversed, and his sentences are vacated. This matter is remanded for resentencing.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.