STATE OF LOUISIANA
v.
TONY E. MASSIE.
No. 2008 KA 0046.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
NOT DESIGNATED FOR PUBLICATION
HON. WALTER P. REED, District Attorney, Covington, LA, KATHRYN W, LANDRY, Assistant District Attorney, Baton Rouge, La, Attorneys for State of Louisiana.
FRANK SLOAN, MANDEVILLE, LA, Attorney for Defendant-Appellant, TONY E. MASSIE
Before: CARTER, C.J., PETTIGREW, and WELCH, JJ.
PETTIGREW, J.
The defendant, Tony E. Massie, was charged by bill of information with one count of attempted carjacking (count I), a violation of La. R.S. 14:27 and La. R.S. 14:64.2, and pled not guilty. Prior to trial, the State amended the bill of information to also charge one count of attempted simple robbery (count II), a violation of La. R.S. 14:27 and La. R.S. 14:65, and the defendant pled not guilty to count II. The State then severed count I. Following a jury trial on count II, the defendant was found guilty as charged. Thereafter, the State filed a habitual offender bill of information against the defendant, alleging he was a sixth-felony habitual offender.[1]
On July 17, 2007, prior to the hearing on the habitual offender bill of information, the defendant was sentenced to three years at hard labor. Following the habitual offender hearing, he was adjudged a fourth-felony habitual offender. On August 15, 2007, the defendant was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. Subsequently, in supplemental and amended written reasons for judgment, the court found the defendant to be a third-felony crime of violence habitual offender and sentenced him to imprisonment for the remainder of his natural life, without the benefit of parole, probation, or suspension of sentence.
The defendant now appeals, assigning the following specifications of error: (1) the trial judge erred in adjudicating the defendant to be a fourth-felony habitual offender because the State plainly failed to meet its burden of proof; and (2) the trial court erred in failing to vacate the defendant's original sentence before sentencing him as a multiple offender. For the reasons that follow, we affirm the conviction, the habitual offender adjudication, and the sentence on count II.

FACTS
The victim, Carolyn Sue McAdams, testified as follows concerning the offense. On May 24, 2006, she agreed to give the defendant a ride home from her business, where the defendant had been a frequent customer and an occasional worker. The defendant directed the victim to a remote location, claiming he lived next to a church. He then attempted to remove the keys from the ignition of the victim's vehicle. The victim struggled with the defendant for the keys, and the defendant told her to shut up and get out of the car. He also slapped her in the face and attempted to cover her mouth when she screamed for help. The attack was interrupted when a motorist arrived at the scene to see if the victim needed help.

HABITUAL OFFENDER ADJUDICATION
In assignment of error number 1, the defendant argues that the State failed to meet its burden of proving beyond a reasonable doubt the fact of conviction and representation by counsel for each predicate offense by certified copy of minutes or by contemporaneously recorded documentation. Additionally, the defendant argues that predicate #1 was improperly used as a predicate offense because, at the time of the commission of the offense, the offense was not a felony under the analogous Louisiana statute. He also challenges the use of predicates # 2 and #3, arguing that the convictions were obtained on the same day and should have been counted as one conviction, and that the offenses would not have been felonies under the analogous Louisiana statutes. He also challenges the use of predicates #4 and #5, arguing that the State failed to establish his representation by counsel by contemporaneous record for the convictions.
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one that reflects a colloquy between the judge and the defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.[2] State v. Shelton, 621 So.2d 769, 779-780 (La. 1993); State v. Bickham, 98-1839, p. 4 (La. App. 1 Cir. 6/25/99), 739 So.2d 887, 889-890. The purpose of the rule of Shelton is to demarcate sharply the differences between direct review of a conviction resulting from a guilty plea, in which the appellate court may not presume a valid waiver of rights from a silent record, and a collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. See State v. Deville, XXXX-XXXX, p. 4 (La. 7/2/04), 879 So.2d 689, 691 (per curiam).
Initially, we note that although the defendant was adjudged a fourth-felony habitual offender at the conclusion of the habitual offender hearing, the court subsequently found him to be a third-felony crime of violence habitual offender on the basis of the instant offense and predicates #4 and #5. Accordingly, we examine whether the State carried its evidentiary burden concerning predicates #4 and #5.
At the habitual offender hearing, the State introduced into evidence a certified copy of the defendant's "pen pack" from the Michigan Department of Corrections. The defense objected, arguing the State had failed to present anyone from Michigan to identify the documentation. The State responded that the documentation was self-authenticating. The trial court overruled the defense objection, and the defense objected to the ruling of the court.
In regard to predicate #4, the documentation included a "BASIC INFORMATION SHEET" reflecting that on December 21, 1981, the defendant was convicted of criminal sexual conduct, first degree, a violation of "Comp. Law. No. 750.520b," committed on November 1, 1981. The information sheet also indicated that the defendant had a retained attorney, "R. Margolis." A pre-sentence investigation report (PSI) for predicate #4 indicated that the defendant was represented by Margolis on December 21, 1981. An "INDETERMINATE SENTENCE RECORD," bearing the docket number for predicate #4 and another offense, indicated that on February 11,1982, the defendant pled guilty to "C.S.C. III," a violation of "750.520b," and was sentenced to 1 to 15 years.
Documentation concerning the criminal statutes of Michigan indicated that criminal sexual conduct (CSC) in the first, second, or third degree was a felony. First and third degree CSC involved penetration, and first degree CSC also involved additional aggravating circumstances. Michigan Penal Code §750.520b referenced first degree CSC.
Regarding the facts of predicate #4, the PSI indicated the defendant left a Halloween party with the victim "where the use of drugs was rampant." The victim had agreed to give the defendant a ride home in her vehicle. The defendant struck her in the face, bloodying her nose, took control of the vehicle, and drove to a new-home construction site. He then broke into a home, tore off the victim's clothes, and had intercourse with the victim. He subsequently left with the victim, but later returned to the same home and "forced [the victim] to have a second act of intercourse."
In regard to predicate #5, the documentation included a "BASIC INFORMATION SHEET' reflecting that on December 3, 1984, the defendant was convicted of breaking and entering with intent to commit CSC, second degree, a violation of "Comp. Law. No. 750.520d," committed on September 6, 1983. The information sheet also indicated that the defendant had a retained attorney," Nicholas Smith." A PSI for predicate #5 was also included with the documentation, but most of the report was illegible. An "INDETERMINATE SENTENCE RECORD" for predicate #5 indicated that on December 3, 1984, the defendant pled guilty to breaking and entering with intent to commit second degree CSC and was sentenced to 4 to 15 years. The State also introduced into evidence documentation indicating that the defendant was discharged from the Michigan Department of Corrections on August 13, 2001.
The defense rested without presenting any evidence.
The defendant relies upon State v. Allen, XXXX-XXXX (La. App. 4 Or. 1/10/01), 777 So.2d 1252, writ denied. XXXX-XXXX (La. 5/3/02), 815 So.2d 92, and State v. Mills, 570 So.2d 540 (La. App. 4 Cir. 1990). In Allen, XXXX-XXXX at pp. 9-10, 777 So.2d at 1257-1258, the court found that the State failed to sufficiently establish the predicate offense because it presented only a certified copy of the defendant's birth certificate, a fingerprint card, and a probation order judgment, but did not present documentation showing that the defendant was represented by counsel or whether the defendant plead guilty or went to trial. The court observed that the jurisprudence required the State" to prove the conviction and its date by a certified copy of a minute entry (or an equivalent contemporaneously recorded or executed document) showing the plea and that the accused was represented by counsel." In Mills, 570 So.2d at 541, the court found that the State failed to sufficiently establish the predicate offense because it relied on the listing of a defense attorney on a correctional facility admittance sheet, prepared eight days after the entry of the defendant's guilty plea, which did not disclose whether the attorney was present when the plea was entered.
This case must be decided under Shelton, rather than under Allen or Mills. Mills was decided under the pre-Shelton jurisprudence, which placed the entire burden on the prosecution in a recidivism proceeding. While Allen was decided over seven years after Shelton, it did not cite Shelton. Like Mills, Allen relied on pre-Shelton jurisprudence, placing the entire burden on the State. In Shelton, the court revised its previous scheme allocating burdens of proof in habitual offender proceedings. Sheiton, 621 So.2d at 779-780.
A careful review of the documentation introduced by the State in support of the use of predicates #4 and #5 to establish the defendant's habitual offender status convinces us that the State met its initial burden under Sheiton. Thereafter, the defendant failed to produce any affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas. Accordingly, the State had no burden to prove the constitutionality of predicates #4 and # 5 by "perfect" transcripts or otherwise. This assignment of error is without merit.

FAILURE TO VACATE ORIGINAL SENTENCE
In assignment of error number 2, the defendant argues that although the August 15, 2007 minutes indicate that the court vacated the previously imposed sentence prior to sentencing the defendant as a habitual offender, the transcript fails to reflect that the original sentence was vacated.
The defendant is correct. Although it is apparent from the court's actions that it intended to vacate the original sentence, out of an abundance of caution, we vacate the sentence imposed on July 17, 2007. See State v. Meneses, 98-0699, p. 2, n.1 (La. App. 1 Cir. 2/23/99), 731 So.2d 375, 376, n.1.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND AUGUST 15, 2007 SENTENCE ON COUNT II AFFIRMED; JULY 17, 2007 SENTENCE VACATED.
NOTES
[1] Predicate #1 was set forth as the defendant's conviction, under Wayne County Court (Michigan) Docket 90-3757, for unlawful driving away of an automobile, a violation of (Michigan Penal Code) §750.413. Predicate #2 was set forth as the defendant's conviction, under Wayne County Court Docket #02-13897, for unlawful driving away of an automobile, a violation of (Michigan Penal Code) §750.413. Predicate #3 was set forth as the defendant's conviction, under Wayne County Court Docket #02-13897, for third degree fleeing a police officer, a violation of (Michigan Penal Code) §750.413 (sic). Predicate #4 was set forth as the defendant's conviction, under Wayne County Court Docket #XX-XXXXXX, for third degree criminal sexual conduct, a violation of (Michigan Penal Code) §750.520. Predicate # 5 was set forth as the defendant's conviction, under Wayne County Court Docket #XX-XXXXXX, for "[b]reaking and [e]ntering with [i]ntent," a violation of (Michigan Penal Code) §750.110.
[2] In Boykin v. Alabama, 395 U.S. 238, 243-244, 89 S.Ct. 1709, 1712-1713, 23 LEd.2d 274 (1969), the United States Supreme Court reversed five robbery convictions founded upon guilty pleas because the court accepting the pleas had not ascertained that the defendant voluntarily and intelligently waived his right against compulsory self-incrimination, right to trial by jury, and right to confront his accusers. Boykin only requires a defendant be informed of these three rights. "Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions." State v. Smith, 97-2849, p. 3 (La. App. 1 Cir. 11/6/98), 722 So.2d 1048 (quoting State v. Nuccio, 454 So.2d 93, 104 (La. 1984)).