998 So.2d 197 (2008)
STATE of Louisiana
v.
Cedric EVANS.
No. 2008 KA 0417.
Court of Appeal of Louisiana, First Circuit.
October 31, 2008.
*198 Walter P. Reed, District Attorney, Kathryn Landry, Baton Rouge, LA, for Appellee.
*199 Frank Sloan, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant Cedric Evans.
Cedric Evans, Angola, LA, Pro Se.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GUIDRY, J.
The defendant, Cedric E. Evans, was charged by bill of information with one count of possession of 28 grams or more, but less than 200 grams of cocaine, a violation of La. R.S. 40:967 F(1)(a), and pled not guilty. Following a jury trial, he was found guilty as charged. Thereafter, the State filed a habitual offender bill of information against the defendant, alleging he was a second-felony habitual offender. Following a hearing, he was adjudged a second-felony habitual offender, and was sentenced to forty years at hard labor, with ten years without benefit of parole. On appeal, this court vacated the conviction and sentence and remanded for a new trial. State v. Evans, 99-2208 (La.App. 1st Cir.9/22/00), 771 So.2d 322 (unpublished opinion). Following a new trial, he was found guilty as charged. Thereafter, the State filed a habitual offender bill of information against the defendant, alleging he was a fourth-felony habitual offender.[1] Prior to the habitual offender hearing, he was sentenced to forty years at hard labor, ten years without benefit of parole, probation, or suspension of sentence. Following a hearing, he was adjudged a third-felony habitual offender and sentenced to be imprisoned for the remainder of his natural life without benefit of parole, probation, or suspension of sentence. He now appeals, designating four counseled assignments of error and one pro se assignment of error.

ASSIGNMENTS OF ERROR

Counseled
1. The trial judge erred in denying the defense motion to quash.
2. The trial court erred in adjudicating the defendant to be a third-felony habitual offender.
3. The trial court erred in sentencing the defendant to life imprisonment as a third-felony habitual offender.
4. The trial court erred in failing to vacate the defendant's original sentence before sentencing him as a multiple offender.

Pro se
1. The prosecution failed to present sufficient evidence to support the adjudication of the defendant as a habitual offender.
For the following reasons, we affirm the conviction, the habitual offender adjudication, and the sentence.

FACTS
On December 30, 1996, at approximately 9:30 p.m., Louisiana State Police Trooper Kurt Vorhoff observed a vehicle veering off the roadway as it traveled on Interstate 12 between Hammond and Covington. Trooper Vorhoff activated his blue lights and siren, and the vehicle pulled over. Carolyn Travis was driving the vehicle and the defendant was a passenger.
*200 While speaking to Travis, Trooper Vorhoff noticed that the defendant was making rapid movements in the vehicle, including repeatedly turning around to look behind him, reaching forward, and reaching under his seat. Travis indicated she was traveling with her boyfriend from Texas to the casino boats in Mississippi and they planned to stay there a couple of days before returning. She also indicated that a rental contract for the car was in the glove compartment.
The defendant was still moving around in the car as Trooper Vorhoff approached the vehicle and asked him to retrieve the rental contract from the glove compartment. The defendant's hands shook as he retrieved the rental contract, and he did not make eye contact with Trooper Vorhoff. The defendant indicated that Travis was his wife and they were travelling from Texas to the casino boats in Biloxi and would be staying for about a week before possibly continuing to Hattiesburg.
Another Trooper arrived on the scene and Trooper Vorhoff returned to Travis and issued her a warning citation. In response to Trooper Vorhoff s inquiry, Travis stated she did not have anything illegal and did not know of anything illegal in the car. She also gave Trooper Vorhoff permission to search the vehicle.
Trooper Vorhoff approached the vehicle again, explained to the defendant that Travis had given him consent to search the vehicle, and asked the defendant to step out of the car while it was being searched. As the defendant stepped out of the car, he dropped a clear, plastic object with his left hand. Trooper Vorhoff also noticed that the defendant had a large, abnormal bulge at his midsection. Trooper Vorhoff was concerned that the defendant might have a weapon and instructed him to put his hands on top of his head. While performing an outer-clothing pat down of the defendant, Trooper Vorhoff observed a medium-sized, clear, plastic bag containing a white substance, which Trooper Vorhoff suspected was cocaine.
Trooper Vorhoff told the defendant to put his hands on the car. The defendant briefly complied, but then spun around, struck Trooper Vorhoff, and attempted to flee. Trooper Vorhoff grabbed the defendant's arm, but the defendant struggled loose and began running away. During the ensuing chase, the defendant threw down several packages of suspected cocaine before being tackled by Trooper Vorhoff. Trooper Vorhoff subsequently recovered nine bags, containing a total net weight of 139 grams of cocaine, and one bag containing approximately 11 grams of marijuana. The bags were located either where Trooper Vorhoff had seen the defendant throw them down or directly along the path that Trooper Vorhoff had chased the defendant.
The defendant was advised of his Miranda[2] rights and stated that "the dope" belonged to him, and Travis did not have anything to do with the drugs. After signing an advice of rights/waiver form at the narcotics office, he also stated that he had been carrying approximately eight ounces of crack on his person, had purchased the drugs in Houston for $3500, and had planned to sell the drugs in Hattiesburg.

UNTIMELY PROSECUTION
In counseled assignment of error number 1, the defendant argues the State failed to prosecute him within one year from the reversal of his conviction by this court, and thus, the motion to quash should have been granted.
*201 When a defendant obtains a new trial, the State must commence the second trial within one year from the date the new trial is granted or within the period established by La. C. Cr. P. art. 578, whichever is longer. La. C. Cr. P. art. 582. The period of limitation established by Article 582 shall be interrupted by any of the causes stated in La. C. Cr. P. art. 579. Where such interruption occurs, the State must commence the new trial within one year from the date the cause of interruption no longer exists. La. C. Cr. P. art. 583.
The period of limitation established by Article 578 shall be interrupted if the defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record. La. C. Cr. P. art. 579(A)(3). The burden under La. C. Cr. P. art. 579(A)(3) is not on the State to show that the defendant placed himself outside of its control to secure his presence at trial, but on the defendant and his sureties to avoid the consequences of his failure to appear in court after receiving notice. Since 1984, one of those consequences is the interruption of the time limits placed on trial. State v. Romar, 07-2140, pp. 7-8 (La.7/1/08), 985 So.2d 722, 727 (per curiam). The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists. La. C.Cr.P. art. 579(B).
Except as otherwise provided in Louisiana Code of Criminal Procedure, Title XVII, Chapter 2, no trial shall be commenced in non-capital felony cases after two years from the date of institution of the prosecution. La.C.Cr.P. art. 578(A)(2). Possession of 28 grams or more, but less than 200 grams of cocaine is a non-capital felony offense. La. R.S. 40:967 F(1)(a). Prosecution was instituted against the defendant by the filing of the bill of information charging him with the instant offense on March 26, 1997. Thus, under Article 578(A)(2), the State had until March 26, 1999 to commence trial. The State timely commenced the defendant's first trial on June 29, 1998. Thereafter, this court rendered judgment vacating the defendant's conviction and sentence and remanding for a new trial on September 22, 2000. The State did not apply for rehearing or apply for review to the supreme court within fourteen days after rendition of the judgment, which subsequently became final on October 6, 2000. See La.C.Cr.P. art. 922(B). Thus, under Article 582, the State originally had until October 6, 2001 to commence the new trial.
On December 20, 2000, the defendant appeared in court and indicated he had retained Frank Sloan as counsel. The court assigned the matter for jury trial on February 12, 2001.
On February 12, 2001, the defendant appeared in court, but Sloan was absent after having advised the court and the State that he had a conflict with the date, but could be present on February 13, 2001. The court instructed the defendant to return on February 13, 2001.
On February 13, 2001, the defendant failed to appear in court and the court issued an attachment for his arrest.
The defendant next appeared in court on April 16, 2003. His counsel was also present. The court reset the jury trial for June 16, 2003 and rescinded and recalled the attachment.
On May 27, 2003, the defendant appeared in court with counsel for pretrial conference. On motion of the defense, and over objection by the State, the matter was continued to September 8, 2003.
On August 8, 2003, the defendant failed to appear for pretrial conference. The court issued an attachment for his arrest.
*202 On September 8, 2003, the matter on assignment for trial, the defendant appeared in court, but on written motion of defense counsel, the matter was continued to November 3, 2003. The court rescinded and recalled the attachment previously issued.
On November 3, 2003, the matter on assignment for trial, the defendant appeared in court with counsel. On motion of the defense, the matter was continued to February 9, 2004, when trial commenced, and the defense made an oral motion to quash on the basis of prescription. The court denied the motion to quash, noting the record indicated the defendant had failed to appear between 2001 and 2003.
The trial court correctly denied the motion to quash. Prescription was interrupted by the defendant's failure to appear on February 13, 2001, after receiving actual notice on February 12, 2001, in open court. See La.C.Cr.P. art. 579(A)(3). Prescription began to run anew when the defendant appeared in court on April 16, 2003,[3] and the State timely commenced trial within one year from that date. See La. C.Cr.P. arts. 579(B) and 583; Romar, 07-2140 at 6, 985 So.2d at 726 ("The 1984 amendment of La.C.Cr.P. art. 579 made a defendant's contumacious failure to appear for trial after receiving notice, a direct contempt of court, La.C.Cr.P. art. 21(A)(1), a ground of interruption of the time limits in La.C.Cr.P. art. 578 for bringing him to trial, without regard to whether he thereby intended to avoid prosecution altogether by rendering himself a fugitive from justice, or whether he had otherwise placed himself beyond the control of the [S]tate to secure his presence for trial")
This assignment of error is without merit.

HABITUAL OFFENDER ADJUDICATION
In counseled assignment of error number 2, the defendant argues the State failed to meet its burden of proof in regard to the use of predicate # 1 in the habitual offender proceeding. In pro se assignment of error number 1, the defendant also challenges the sufficiency of the State's proof concerning the use of predicate # 3 in the habitual offender proceeding.
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between the judge and the defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden *203 of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.[[4]]
State v. Shelton, 621 So.2d 769, 779-80 (La.1993)(footnotes omitted).
The purpose of the rule of Shelton is to demarcate sharply the differences between direct review of a conviction resulting from a guilty plea, in which the appellate court may not presume a valid waiver of rights from a silent record, and a collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. See State v. Deville, 04-1401, p. 4 (La.7/2/04), 879 So.2d 689, 691 (per curiam).
At the habitual offender hearing, in connection with predicate # 1, the State introduced into evidence a certified true copy of an indictment charging "Cedric Russell"[5] and three other persons with possession of 90.9 grams of marijuana with intent to deliver and a certified true copy of "ENTRY OF GUILTY PLEA AND JUDGMENT OF COURT[,]" indicating that the defendant appeared in court with counsel Rex Jones, was lawfully arraigned on the indictment, and after "being duly advised of all his Constitutional rights in the premises and being further advised of the consequences of such a plea," entered a plea of guilty, which the court accepted.
In connection with predicate # 3 the State introduced into evidence a certified true copy of an indictment charging "Cedrick [sic] Russell" and Adrian Wilson with possession with intent to distribute cocaine and a certified true copy of an "ORDER[,]" indicating that the defendant appeared in court with counsel Richard Rehfeldt, was lawfully arraigned on the indictment, and after being "duly advised... of all of [his] legal and constitutional rights on the premises," and after "freely, voluntarily and intelligently" waiving those rights upon being advised of the consequences of such a plea of guilty, pled guilty to "C/S POSS[.]" The defendant did not present any evidence.
The defendant argues that the documents introduced by the State in connection with predicates # 1 and # 3 were insufficient under State v. Allen, 00-0013 (La.App. 4th Cir.1/10/01), 777 So.2d 1252, writ denied, 01-0703 (La.5/3/02), 815 So.2d 92. In Allen, the court found that the State failed to sufficiently establish the predicate offense because it presented only a certified copy of the defendant's birth certificate, a fingerprint card, and a probation order judgment, and the jurisprudence required "that State had to prove the conviction and its date by a certified copy of a minute entry (or an equivalent contemporaneously recorded or executed *204 document) showing the plea and that the accused was represented by counsel." Allen, 00-0013 at 9, 777 So.2d at 1257-58.
This case must be decided under Shelton, rather than under Allen. Allen was decided under the pre-Shelton jurisprudence, which placed the entire burden on the prosecution in a recidivism proceeding. In Shelton, the court revised its previous scheme allocating burdens of proof in habitual offender proceedings. Shelton, 621 So.2d at 779.
A careful review of the documentation introduced by the State in support of the use of predicates # 1 and # 3 to establish the defendant's habitual offender status convinces us that the State met its initial burden under Shelton. Thereafter, the defendant failed to produce any affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Accordingly, the State had no burden to prove the constitutionality of predicates # 1 and # 3 by "perfect" transcript or otherwise. See Shelton, 621 So.2d at 779-80.
These assignments of error are without merit.

APPLICABLE HABITUAL OFFENDER LAW
In counseled assignment of error number 3, the defendant argues that under La. R.S. 15:308, he should have been sentenced in accordance with the habitual offender law in effect at the time of sentencing, rather than the habitual offender law in effect at the time of the commission of the offense.
Section 308 of title 15 of the Louisiana Revised Statutes, in pertinent part, provides:
A. (1) The legislature hereby declares that the provisions of Act No. 403 of the 2001 Regular Session of the Legislature provided for more lenient penalty provisions for certain enumerated crimes and that these penalty provisions were to be applied prospectively.
(2) The legislature hereby further declares that Act No. 45 of the 2002 First Extraordinary Session of the Legislature revised errors in penalty provisions for certain statutes which were amended by Act No. 403 of the 2001 Regular Session of the Legislature and that these revisions were to be applied retroactively to June 15, 2001, and applied to any crime committed subject to such revised penalties on and after such date.
B. In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced according to the following provisions: ... R.S. 15:529.1(A)(1)(b)(ii) ... 967 ... (F)(1),... prior to June 15, 2001, provided that such application ameliorates the person's circumstances.
C. Such persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22.
Section 308 of title 15 of the Louisiana Revised Statutes does not authorize courts to resentence offenders after their sentences have become final, but rather provides an exclusive remedy of applying to the Louisiana Risk Review Panel. State v. Dick, 06-2223, pp. 10-11 (La.1/26/07), 951 So.2d 124, 131.
The defendant argues that because he committed the instant offense prior to June 15, 2001, Act No. 403 of the 2001 Regular Session of the Legislature, and Act No. 45 of the 2002 First Extraordinary *205 Session, apply to him. He relies upon the language of La. R.S. 15:308(B), "Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of persons who committed crimes, ... prior to June 15, 2001, provided that such application ameliorates the person's circumstances."
At the time of the commission of the instant offense, and prior to amendment by 2001 La. Acts No. 403, § 2, La. R.S. 15:529.1(A)(1)(b)(ii) provided for a life sentence if the third felony or either of the two prior felonies were violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years. Following amendment by Act 403, La. R.S. 15:529.1(A)(1)(b)(ii) provided for a life sentence if the third felony and the two prior felonies were violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than ten years.
The instant offense and predicate # 1 are violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years. La. R.S. 40:967 F(1)(a) (prior to amendment by 2001 La. Acts, No. 403, § 4 punishable by imprisonment at hard labor of not less than ten years, nor more than sixty years); La. R.S. 40:966(B)(2) (prior to renumbering by 2002 La. Acts 1st Ex. Sess., No. 45, § 1punishable by imprisonment at hard labor of not less than five years nor more than thirty years). However, predicate # 3 is not a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years. La. R.S. 40:967 C(2) (punishable by imprisonment with or without hard labor of not more than five years).
In State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, the Louisiana Supreme Court examined whether 2001 La. Acts, No. 403, § 4's reduction in penalty for violation of La. R.S. 40:966 C should be applied to offenses committed prior to the effective date of the statute when the defendant was sentenced after the effective date of the statute. The court held the sentencing changes enacted by Act 403 did not apply to anyone sentenced after the effective date of the act, regardless of when the offense was committed, but rather, "those who engage in criminal activity must face the consequences of their actions, including the penalty provisions that apply as of the date of the offense." Sugasti, 01-3407 at 7, 820 So.2d at 522.
Similarly, in the instant case, the trial court correctly sentenced the defendant under La. R.S. 15:529.1 prior to amendment by 2001 La. Acts, No. 403, § 2. The defendant committed the instant offense prior to the effective date of 2001 La. Acts, No. 403, § 2. The provisions of 2001 La. Acts, No. 403 only apply prospectively. 2001 La. Acts, No. 403, § 6; Sugasti, 01-3407 at 5, 820 So.2d at 521. Section 308 of title 15 of the Louisiana Revised Statutes does not change the applicable habitual offender law; rather it provides an exclusive remedy of applying to the Louisiana Risk Review Panel. See Dick, 06-2223 at 10-14, 951 So.2d at 131-33.
This assignment of error is without merit.

FAILURE TO VACATE ORIGINAL SENTENCE
In counseled assignment of error number 4, the defendant argues that although the October 11, 2007 minutes indicate that the court vacated the sentence previously imposed on March 3, 2006, the transcript fails to show that the March 3, 2006 sentence was vacated.
The defendant is correct. Although it is apparent from the court's actions that it *206 intended to vacate the original sentence, out of an abundance of caution, we vacate the sentence imposed on March 3, 2006. See State v. Meneses, 98-0699, p. 2 n. 1 (La.App. 1st Cir.2/23/99), 731 So.2d 375, 376 n. 1.

REVIEW FOR ERROR
Initially, we note that our review for error is pursuant to La. C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.C.Cr.P. art. 920(2).
The trial court failed to impose the mandatory fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars. See La. R.S. 40:967 F(1)(a).[6] Although the failure to impose the fine is error under La.C.Cr.P. art. 920(2), it certainly is not inherently prejudicial to the defendant. Because the trial court's failure to impose the fine was not raised by the State in either the trial court or on appeal, we are not required to take any action. As such, we decline to correct the illegally lenient sentence. State v. Price, 05-2514, pp. 18-22 (La.App. 1st Cir.12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, 07-0130 (La.2/22/08), 976 So.2d 1277.

CONCLUSION
Based on the foregoing review, we find the law and evidence supports the rulings of the trial court in this matter and therefore affirm.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
NOTES
[1] Predicate # 1 was set forth as the defendant's August 8, 1988 guilty plea to possession of marijuana with intent to deliver in the Twelfth Judicial District Circuit Court, Forrest County, Mississippi, Docket # 12395. Predicate # 2 was set forth as the defendant's April 16, 1990 guilty plea for possession of marijuana with intent to distribute in the First Judicial District Circuit Court, Hinds County, Mississippi, Docket #E-159. Predicate #3 was set forth as the defendant's November 9, 1993 guilty plea to possession of cocaine in the First Judicial District Circuit Court, Hinds County, Mississippi, Docket # 90-1-315CR.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] At the hearing on the motion to quash, without defense objection, the State set forth that the defendant was arrested in 2003 after being a fugitive for over two years.
[4] In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court reversed five robbery convictions founded upon guilty pleas because the court accepting the pleas had not ascertained that the defendant voluntarily and intelligently waived his right against compulsory self-incrimination, right to trial by jury, and right to confront his accusers. Boykin only requires a defendant be informed of these three rights. "Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions." State v. Smith, 97-2849, p. 3 (La.App. 1st Cir. 11/6/98), 722 So.2d 1048.
[5] The State presented testimony from an expert in fingerprint analysis and comparison, who based on the fingerprint analysis stated that "Cedric Russell" and the defendant were the same person. The defendant also used the name "Cedric Russell" when being fingerprinted at the habitual offender hearing. Additionally, the social security number and date of birth given by the defendant were identical to the social security number and date of birth given by "Cedric Russell."
[6] It is not a crime to be a habitual offender. The statute increases the sentence for a recidivist. The penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute. State v. Bruins, 407 So.2d 685, 687 (La.1981).